UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

FRANCISCAN HEALTH INDIANAPOLIS    )
811 S. Emerson Ave.                )
Indianapolis, IN  46237            )
                                   )
         Plaintiff,                )
    v.                             )
                                   )
SYLVIA BURWELL,                    )   Case No. 1:16-cv-3142
Secretary of the United States     )
Department of Health and Human Services, )
Room 700-E                         )
200 Independence Avenue, S.W.      )
Washington, D.C. 20201             )
                                   )
         Defendant.                )

**COMPLAINT FOR JUDICIAL REVIEW OF
ADMINISTRATIVE REVIEW DISMISSAL WITH APPROPRIATE
DECLARATORY JUDGMENT AND/OR INJUNCTIVE RELIEF**

The Plaintiff, by counsel, for its complaint against Defendant, Sylvia Burwell, Secretary of the Department of Health and Human Services, allege and state the following:

**THE PARTIES AND RELEVANT AGENCIES**

1. Plaintiff is a not-for-profit hospital providing services certified under the Medicare program, and at all relevant times, the Hospital was a provider under Title XVIII of the Social Security Act, 42 U.S.C. 1395 *et seq*., ("Medicare Act").

2. The Defendant, Sylvia Burwell, is Secretary of the United States Department of Health and Human Services ("Secretary"), which is the governmental agency responsible for the Medicare program.

3. The Centers for Medicare and Medicaid Services ("CMS") administers the Medicare program by delegation from, and as agent of, the Secretary.

4. The Medicare Administrative Contractor ("MAC") is an organization that administers the Medicare program in an identified geographic area under contract with CMS pursuant to 42 U.S.C. § 1395h. For the Medicare appeal at issue, the MAC designated as the CMS representative was Wisconsin Physician Services, Inc.

5. The Provider Reimbursement Review Board ("PRRB") is an agency of the United States Department of Health and Human Services and acts as an administrative hearing body for Medicare reimbursement disputes between providers of Medicare services and Medicare Administrative Contractors pursuant to 42 U.S.C. § 1395oo.

## JURISDICTION AND VENUE

6. This action arises out of the PRRB's review of a motion to dismiss on jurisdictional grounds of a Medicare reimbursement dispute between the Plaintiff, the MAC and CMS. The PRRB rejected the MAC's basis for jurisdictional challenge but on its own motion dismissed the case on jurisdictional grounds for unrelated reasons without affording the Plaintiff the opportunity to brief or explain that issue. The jurisdiction of this Court is founded upon 42 U.S.C. § 1395oo(f)(1); 28 U.S.C. § 1331, and 28 U.S.C. § 1361.

7. Venue lies in the United States District Court for the Southern District of Indiana pursuant to 42 U.S.C. § 1395oo(f)(1).

## THE DISPROPORTIONATE SHARE HOSPITAL PROGRAM

8. Congress has mandated that CMS pay hospitals on a prospective basis for inpatient services provided to Medicare beneficiaries. *See generally* 42 U.S.C. § 1395ww(d). Under this prospective payment system, hospitals are reimbursed for inpatient services based on the discharge diagnosis of the patient as coded into Diagnostic Related Groups (DRGs) established by CMS under the Medicare program.

9. Congress has also mandated an adjustment to prospective payments for hospitals that serve a disproportionate number of low income patients. 42 U.S.C. § 1395ww(d)(5)(F). This program is commonly called the "Disproportionate Share Hospital" ("DSH") program. The overriding intent of Congress in establishing the DSH program was to supplement the prospective payments of hospitals serving low-income persons." *Alhambra Hospital v. Thompson*, 259 F.3d 1071, 1075-1076 (9th Cir. 2001) (quoting *Legacy Emmanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d. 1261, 1265 (9th Cir. 1996) (quoting *Jewish Hosp., Inc. v. Secretary of Health & Human Servs.*, 19 F.3d 270, 272 (6th Cir. 1994)

10. Federal Courts have long recognized that the Defendant has failed to implement the DSH program as mandated by Congress. In fact, in response to the Defendant's steadfast refusal to implement the DSH program this Court used its mandamus power to order the Defendant to do so. *Samaritan Health Ctr. v. Heckler,* 636 F. Supp. 503, (D.D.C. 1985). The Defendant's resistance to complying with the Congressional mandate and order of this Court subsequently led that Court to strongly consider a contempt finding against the Defendant. *See Samaritan Health Ctr. v. Bowen*, 646 F. Supp. 343, 345 – 347. (D.D.C. 1986).

11. Court recognition of the Secretary's hostility to the DSH program continued as a series of Circuit Court decisions repudiated the Defendant's refusal to count "Medicaid eligible days" as mandated by 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). *See Jewish Hosp., Inc. v. Secretary of Health & Human Servs.*, 19 F.3d 270, 276 (6th Cir. 1994) (noting "credible and compelling" evidence that the Defendant was "hostile to the concept of the disproportionate share adjustment" and suggesting that the Secretary "apparently intended to impede the implementation of the PPS framework); *Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984, 990 (4th Cir. 1996) (condemning the Defendant's approach as an attempt to "rewrite the will of

Congress" and accusing the agency of being "hostile from the start to the very idea of making the [DSH] payments at issue"); *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996). *Legacy Emmanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996).

12. Courts have continued to recognize the Secretary's hostility and unreasonable handling of DSH issues in the new millennium. *Clark Reg'l Med. Ctr. v. United States Dep't of Human Servs.*, 314 F.3d 241, 249 (6th Cir. 2002), (noting the "Department's history of hostility to the concept of DSH adjustment" and admonishing the Defendant for trying to "simply interpret the [DSH] regulation so as to always disadvantage the subject hospitals"); *Portland Adventist Med Ctr. v. Thompson*, 399 F.3d 1091, 1099 (9th Cir. 2005) (finding that "this appears to be the latest in a series of cases in which the Secretary has refused to implement the DSH provision in conformity with the intent behind the statute"); *Alhambra Hospital v. Thompson*, 259 F.3d 1071, 1076 (note 4) (9th Cir. 2001) (favorably quoting from *Jewish Hospital* in regards to the "credible and convincing evidence of Secretarial hostility to the concept of disproportionate share adjustment").

13. In a case very close to the substantive issue underlying the present appeal, the court listed a number of Defendant's deficiencies in determining the proper amount SSI Days and found that the Defendant "was aware" that CMS was "dropping" SSI Days when determining DSH eligibility and payment. *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, *as amended*, 587 F. Supp. 2d 37 (D.D.C. 2008).

## DETERMINATION OF DSH ELIGIBILITY AND PAYMENT

14. To be eligible for DSH payment, hospitals, in most cases, must meet a "disproportionate patient percentage" as defined by the Medicare statute. 42 U.S.C. § 1395ww(d)(5)(F)(v).

15. The "disproportionate patient percentage" is determined by summing two statutorily defined fractions commonly called the "Medicare Fraction" and the "Medicaid Fraction."

16. The "Medicaid Fraction" (expressed as a percentage) comprises a numerator which is the total inpatient days for a cost reporting period attributable to patients "eligible for assistance" under a State Medicaid plan during their inpatient care divided by a denominator which is the total number of hospital inpatient days for the relevant cost reporting period. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The Plaintiff's Medicaid Fraction is not in dispute in this case.

17. The Medicare Fraction (also expressed as a percentage, called the "SSI percentage" by the PRRB in this appeal) comprises a numerator which is the number of inpatient days made up of patients who were entitled to benefits under Part A of the Medicare statute and were entitled to supplemental security benefits (SSI) under the Social Security Act ("SSI Days"), divided by a denominator that is the total number of inpatient hospitals days for patients eligible for benefits under Medicare Part A. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

18. The substantive dispute in the Plaintiff's initial appeal to the PRRB centers on the numerator of the Medicare Fraction, and in particular, the determination of "SSI Days" as defined above. The Plaintiff asserts the Secretary has provided figures for SSI Days that are inaccurate and understate the numerator of the Medicare Fraction thereby decreasing the Plaintiff's reimbursement under the DSH program. Plaintiff asserts the SSI Days were understated because CMS erroneously failed to include all days in the determination of "SSI Days" for patients who were dually eligible for benefits under Part A of the Medicare statute and for SSI.

19. Unlike other variables in the DSH formula, hospitals do not determine their SSI Days for purposes of inclusion in the numerator of the Medicare Fraction. Rather, CMS determines the number of SSI days and hospitals as well as CMS's contractors, the MAC's, are required to use the CMS number when completing their cost reports. 42 C.F.R. § 412.106(b).

## THE PRRB'S DISMISSAL OF THIS APPEAL

20. Hospitals have "180 days after notice of the Secretary's final determination," to file an administrative appeal with the Provider Reimbursement Review Board. 42 U.S.C. § 1395oo(a)(3).

21. Under the applicable regulations a "final determination" includes a Notice of Program Reimbursement (NPR) from a Provider's designated MAC or a Revised Notice of Program Reimbursement (RNPR) when the matters revised were specifically related to the appeal. 42 C.F.R. § 405.1889.

22. The Plaintiff, through counsel, timely filed this appeal with the PRRB within 180 days of the MAC's revised Notice of Program Reimbursement. The appeal expressly challenged the failure of the CMS and the MAC "to properly include all Dual Eligible Days" when calculating the Plaintiff's DSH program eligibility and payment.

23. Pursuant to CMS regulations and PRRB rules, CMS is not directly a party to the PRRB appeal but is represented by its agent, the MAC. 42 C.F.R. § 405.1843(b). Thus, the MAC is the adverse party to the plaintiff hospitals while the appeal is pending before the PRRB.

24. PRRB rules require that the MAC file a letter within 30 days of the appeal filing with the PRRB advising the Board as to any challenges to Board jurisdiction. PRRB Rules, Rule 10.

25. On December 15 2014 the MAC submitted a "jurisdictional challenge" to the Board asserting that an unrelated aspect to this appeal was barred from administrative and judicial review. On February 11, 2015 the Providers filed a brief responding to the arguments raised by the MAC in its jurisdictional challenge.

26. On September 26, 2016 the PRRB issued a decision related to the MAC's jurisdictional challenge rejecting the MAC's challenge to jurisdiction. However, the PRRB dismissed the Plaintiff from the case on grounds completely unrelated to the arguments raised by the MAC in its jurisdictional challenge. Thus, the Plaintiff had no chance to brief or explain the issue to the PRRB before Plaintiff was summarily dismissed from the case without opportunity to brief or otherwise address the PRRB's jurisdictional concern. The PRRB deviated from its customary practice of first notifying counsel representing a provider of a potentially concerning jurisdictional issue and providing the opportunity to comment on the issue.

27. The PRRB claimed it had no jurisdiction over the question because the Revised Notice of Program Reimbursement "did not specifically revise [the Plaintiff's] SSI percentage." This determination was demonstrably incorrect and is the basis of this appeal.

28. As explained above the "SSI percentage" is the resulting calculation based on several variables. One of those variables is the total "SSI days," and as explained above, the determination of "SSI days" was specifically challenged by the Provider in this appeal. The Revised Notice of Program Reimbursement did revise the Provider's SSI days and accordingly the matter appealed "specifically related" to that revision as required for PRRB jurisdiction in 42 C.F.R. § 405.1889.

## STATEMENT OF AGENCY ERRORS

29. The decision of the PRRB to dismiss Plaintiff's case was arbitrary and capricious and not in accord with the law.

30. The failure of the PRRB to provide notice of the jurisdictional issue upon which it summarily dismissed the case, and its failure to allow Plaintiff's counsel opportunity to present comment and argument as to why valid jurisdiction existed, was arbitrary, capricious and violated the Administrative Procedures Act (*see* 5 U.S.C. § 554) and due process of law.

31. The failure of the PRRB to timely consider the jurisdictional matter, delaying its decision until after alternative appeal routes had expired, was arbitrary, capricious, not in accord with the law, contrary to fundamental principles of equity and violated due process.

WHEREFORE, the Plaintiff, prays as follows:

A. For an Opinion and Order of the Court finding that the PRRB erred in dismissing the Plaintiff's appeal;

B. For an Opinion and Order reinstating the Plaintiff's appeal with the PRRB;

C. For all costs and attorney fees incurred herein; and

D. For any and all other relief to which Plaintiff is entitled.

Respectfully submitted,

HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

/s/ N. Kent Smith
N. Kent Smith, Attorney No. 1777-49
500 N. Meridian Street, Suite 400
Indianapolis, IN  46204-1293
(317) 633-4884
*Attorneys for Plaintiff, Franciscan Health Indianapolis*

2289799v.1